### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDREA COAXUM, Individually and as Parent and Natural Guardian of W.C. and T.C., her minor children, | CIVIL ACTION - LAW |
| and | NO. |
| KATHY YOST, Individually and as Parent and Natural Guardian of M.H., E.H., and P.H., her minor children, | ELECTRONICALLY FILED |
| Plaintiffs, | |
| vs. | JURY TRIAL DEMANDED |
| NORTHWESTERN LEHIGH SCHOOL DISTRICT; WILLIAM DOVICO, Individually and as Principal of Northwestern Lehigh Middle School; AMY WAHL, Individually and as Assistant Principal of Northwestern Lehigh Middle School, | |
| Defendants. | |

### COMPLAINT

Plaintiffs, by and through undersigned counsel, file this Complaint alleging that their rights, pursuant to Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, et. seq. ("Title VI"), the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, 42 U.S.C. § 1983, and Title II of the Americans with Disabilities Act, 29 U.S.C. § 794(a); 42 U.S.C. § 12132, have been violated and avers as follows:

### The Parties

1. Plaintiff, Andrea Coaxum, is an adult individual and natural parent and guardian of W.C. and T.C., her minor children, who at all times relevant hereto resided at 1410 Greene Hill

1

Ct., Kutztown, PA 19530, located within the Eastern District of Pennsylvania. Plaintiff Andrea Coaxum brings claims on behalf of her minor children W.C. and T.C.

2. Plaintiff, Kathy Yost, is an adult individual and natural parent and guardian of M.H., E.H., and P.H., her minor children, who at all times relevant hereto resided at 6941 Kernsville Rd., Orefield, PA 18069, located with the Eastern District of Pennsylvania. Plaintiff Kathy Yost brings claims on behalf of minor children M.H., E.H., and P.H.

3. Defendant, Northwestern Lehigh School District ("NWLSD" or "District"), is a public school district formed pursuant to the laws of the Commonwealth of Pennsylvania, which receives federal financial assistance, acting through and governed by its Board of Directors and Superintendent, whose District Office is located at 6493 Route 309, New Tripoli, PA 18066. At all relevant times, NWLSD educates students at the NWLSD Middle School ("Middle School") which is located at 6636 Northwest Rd., New Tripoli, PA 18066.

4. Defendant William Dovico is an adult individual and was employed by NWLSD as the Principal of the Middle School during the 2023-2024 school year.

5. Defendant Amy Wahl is an adult individual and was employed by NWLSD as the Assistant Principal of the Middle School during the 2023-2024 school year.

6. At all times relevant hereto, W.C., T.C., M.H., E.H., and P.H., were enrolled as students in NWLSD.

7. At all relevant times hereto, NWLSD acted by and through its duly authorized actual and/or apparent agents and employees, including but not limited to Defendant Dovico and Defendant Wahl, who all acted within the course and scope of their actual or apparent agency and employment with NWLSD.

**Jurisdiction and Venue**

8. This action is brought pursuant to Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, et. seq. ("Title VI"), the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, 42 U.S.C. § 1983, and Title II of the Americans with Disabilities Act, 29 U.S.C. § 794(a); 42 U.S.C. § 12132.

9. This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331 as it is a civil action arising under the Constitution and laws of the United States of America.

10. This matter is properly addressed in the venue of the United States District Court for the Eastern District of Pennsylvania, because a substantial part of the events, acts and omissions by Defendants giving rise to Plaintiffs' claims occurred in the jurisdiction of this Court, more specifically, in New Tripoli, Lehigh County, Pennsylvania.

**Operative Facts**

11. At all relevant times hereto, W.C., T.C., M.H., E.H., and P.H. (hereafter referred to as "minor Plaintiffs") are bi-racial students (Caucasian and African American) at NWLSD.

12. Overall, the student body at NWLSD is approximately 90.9% Caucasian and only 1.5% African American.

13. Upon information and belief, during the 2023-2024 school year, less than 15 African American students, including the minor Plaintiffs, attended the District's Middle School.

14. Upon information and belief, a framed picture created by a student in or around 2007 is located outside the guidance counselor's office in the District Middle School which contains a swastika.

15. Upon information and belief, NWLSD did not hire an African American teacher until the 2021-2022 school year.

3

16. The African American teacher, Elijah Hayes-Olivera, subsequently brought a racial discrimination lawsuit against NWLSD and alleged that he was subjected to an unlawfully "racially abusive workplace environment" and that NWLSD fostered "blatant racial hostility, open discrimination, and unlawful retaliation toward African Americans in the workplace." (See, *Elijah Hayes-Olivera v. NWLSD*, E.D.Pa., 23-CV-4982).

17. Likewise, during the 2023-2024 school year, the minor Plaintiffs in this matter were subject to a racially hostile educational environment where students of color, like themselves, were forced to endure constant racial slurs and discrimination and were treated differently based on their race.

18. During the 2023-2024 school year, on a regular and pervasive basis, T.C., M.H., E.H., and P.H., all eighth grade Middle School students, were subjected to being called racial slurs by other students while in the NWLSD Middle School.

19. During the 2023-2024 school year, on a regular and pervasive basis, W.C., a 10th grade student who took classes at the Lehigh Career Technical Institute ("LCTI"), was subjected to being called racial slurs by other students while taking NWLSD busing and transportation.

20. The Defendants were regularly and repeatedly informed about instances of racial slurs, harassment and discrimination during the 2023-2024 school year. Among others are the following:

    (a) On or around April 27, 2023, Plaintiff Kathy Yost emailed Defendant Wahl asking for a meeting with Defendant Dovico regarding M.H., E.H., and P.H. being called racist names and it not being addressed.

(b) On or around November 6, 2023, NWLSD learned that W.C. was regularly and routinely called the n-word on a NWLSD school bus as he was transported to and from classes at LCTI.

(c) On or around December 21, 2023, Plaintiff Andrea Coaxum informed Defendant Dovico that T.C. was regularly subjected to being called the n-word.

(d) On or around January 9, 2024, T.C. got into a physical altercation with another student because the student called him the n-word. Defendant Dovico and/or Defendant Wahl were aware of this incident. The Defendants admit that T.C. was called the n-word in this incident.

(e) On or around January 11, 2024, Plaintiff Andrea Coaxum advised the Defendants that she spoke to the parents of three other students of color in the District and they are experiencing harassment and a hostile environment as well.

(f) On or around January 11, 2024, W.C. was called a f**got and the n-word on his bus which resulted in W.C. getting into a physical fight with the student. NWLSD was aware of this incident.

(g) On or around January 23, 2024, T.C. reported to Defendant Dovico and/or Defendant Wahl that a student called him the n-word.

(h) On or around January 26, 2024, T.C. reported to Defendant Dovico and/or Defendant Wahl that he was called the n-word by another student.

(i) On January 29, 2024, T.C. reported to Defendant Dovico and/or Defendant Wahl that another student called him the n-word in school.

(j) On January 29, 2024, Plaintiff Kathy Yost emailed the NWLSD School Board expressing her concerns of the racial discrimination and bullying her children were enduring every day.

(k) On or about January 31, 2024, Plaintiff Andea Coaxum wrote Defendant Wahl and Defendant Dovico following-up on the January 11, 2024, incident and was told she was not entitled to know if the student that said the n-word to W.C. received any discipline.

(l)  On or about February 2, 2024, T.C. reported to Defendant Wahl that a student suggested that his group team in science class be called the "Nuclear N***ers" as a team name.

(m) On or about February 2, 2024, Plaintiff Kathy Yost emailed concerns to Assistant Superintendent, Troy Sosnovik and Defendant Dovico about racial bullying and discrimination endured by her kids on a daily basis at school.

(n) On or around February 6, 2024, Plaintiff Andrea Coaxum informed Defendant Wahl in writing that T.C. was called the n-word by another student near the bathroom. It was also conveyed to Defendant Wahl to the student frequently called T.C. the n-word.

(o) On or about February 6, 2024, Plaintiff Andrea Coaxum wrote to Defendant Wahl and Defendant Dovico and reported that two students called T.C. the n-word.

(p) On or about February 8, 2024, Plaintiff Kathy Yost emailed Defendant Dovico that E.H. heard another student say the n-word on the bus.

(q) On or about February 8, 2024, P.H. reported to Defendant Dovico and/or Defendant Wahl that another student took his chrome book out of his possession and put the n-word as the background on the computer.

(r) On or about February 15, 2024, W.C. completed an incident form indicating that the n-word was shouted from the back of the bus and that a group of kids have been using the n-word a lot on the bus.

(s) On or about February 15, 2024, E.H. wrote an incident report stating two other students said, "get back to work you monkeys" on the bus.

(t) On or about February 27, 2024, Matthew Givler, the High School Assistant Principal, wrote in response to Plaintiff Andrea Coaxum's request for a safety plan for W.C. that they can't protect W.C. from "racial comments/words used by our entire population."

(u) On or about February 28, 2024, it was reported to Defendant Wahl that T.C. witnessed another student make a "Hail Hitler" salute toward another student in the lunchroom.

(v) On or about March 12, 2024, P.H. reported that another student stated "get out of my way blackie" in class.

(w) On or about April 24, 2024, Plaintiff Kathy Yost submitted complaints alleging an inconsistency in the application of school policies of minority students receiving more severe consequences than the white students in school.

21. NWLSD Board Policy 103 states the following:

The District strives to maintain a safe, positive learning environment for all students that is free from discrimination. Discrimination is inconsistent with the educational and programmatic goals of the District and is prohibited on school grounds, at school-sponsored

7

> activities and on any conveyance providing transportation to or from a school entity or school-sponsored activity.
>
> ….
>
> The Board directs that verbal and written complaints of discrimination shall be investigated promptly, and appropriate corrective or preventive action be taken when the allegations are substantiated.

22. Despite the above policy, during the 2023-2024 school year, it was the practice and custom of the Defendants to fail to promptly investigate and take appropriate corrective or preventive action to instances of racial discrimination and harassment.

23. It is the practice and custom of the Defendants to show deliberate indifference to racial discrimination and harassment.

24. The Defendants failed to properly train staff regarding racial harassment, ignored incidents of racial harassment, and failed to properly report and discipline such instances of harassment.

25. The Defendants failed to properly investigate and/or take the necessary actions to address the pervasive and regular racial slurs and discrimination the minor Plaintiffs were forced to endure during the 2023-2024 school year.

26. As a result of the Defendants permitting a hostile racial environment to persist on W.C.'s bus, W.C. responded to racial slurs from a student and a physical fight occurred. As a result, W.C. faced juvenile charges and was forced to accept a "safety plan" to ride a different bus than his friends. None of this would have occurred had the Defendants properly addressed the situation on or around November 6, 2023, when the issue was brought to the Defendants' attention.

27. Although the Defendants represented to the Plaintiffs that some of their complaints of racial discrimination and harassment were investigated and appropriately dealt with, the

Plaintiffs have no actual independent knowledge that the Defendants took actions to address the above referenced incidents, other than having an extremely brief student assembly in March 2024 to discuss racial tension.

28. The Plaintiffs were repeatedly told by the Defendants that the results of any investigation could not be shared with them.

29. The Plaintiffs were expected to inform or report to the Defendants every time a racial slur or otherwise harassing conduct was directed toward them. To the extent possible, the Plaintiffs did, however, the offensive and harassing conduct by other students continued unabated for the duration of the 2023-2024 school year.

30. The Defendants' inactions in addressing racial discrimination and harassment promptly and as it was reported caused the minor Plaintiffs to endure a hostile educational environment for the entire 2023-2024 school year.

31. Eventually and not in a timely manner, based on the Plaintiffs complaints, an "independent investigation" was paid for by NWLSD into the allegations of racial discrimination and harassment and unequal disciplinary treatment of the Plaintiffs and other minority students.

32. Specifically, on or about November 14, 2024, well after the conclusion of the 2023-2024 school year, NWLSD issued an "Investigative Review" into allegations that M.H., E.H., and P.H. were subject to racial slurs and inequitable treatment.

33. As detailed below, the factual findings did confirm in part that an atmosphere of racial discrimination and unequal discipline to minority students existed at the Middle School.

34. The Investigative Review was conducted by lawyers from King, Spry, Herman, Freund & Faul, LLC, Investigations and Compliance Services Group (hereafter referred to as "King Spry"). Among other things, the Investigative Review found the following:

(a) "In February 2024, a Caucasian student changed the background of P.H.'s Chromebook to say 'ni**ardly.' The student admitted that the action was racially motivated."

(b) Defendant Wahl and Defendant Devico "noted that the student who changed the background of P.H.'s Chromebook to read "ni**ardly" should have been assigned some level of suspension rather than receipt of a detention."

(c) "In March 2024, a Caucasian student told P.H. to "move out of the way blackie." The offending student admitted to the statement."

(d) "Another minority family in the District expressed similar concerns to that of the Plaintiffs as it relates to the administration of discipline against minority students."

(e) "The evidence established that racially offensive language was used and directed towards the minor Plaintiffs on multiple occasions."

(f) NWLSD showed "a lack of consistency in the consequences/discipline assigned" to non-minority students for improper conduct.

(g) NWLSD "acknowledged heightened racial tensions in the Middle School during the 2023-2024 school year."

(h) NWLSD had "a lack of a uniform approach in the administration of discipline."

(i) As a result of the investigation, among other things, it was recommended to NWLSD that "all Middle School Administrators, faculty and staff receive Title VI training."

35. An "Investigative Review" was also issued by King Spry after the end of the 2023-2024 school year into the racial discrimination/harassment claims of W.C. and T.C. Among other things, the respective Investigative Reviews found the following:

(a) With regard to W.C., "clearly, at times, racially offensive language was used, specifically the 'n-word'" and that "the District, however, simply cannot guarantee

    [Plaintiff Andrea Coaxum] that occasionally, individual students will utilize such historically offensive language."

    (b) With regard to T.C., "there were several instances where racially inappropriate language was used in school."

36. The Defendants utterly failed and were deliberately indifferent to the hostile educational atmosphere that existed at the Middle School during the 2023-2024 school year.

37. The response, or lack thereof, of the Defendants to the known acts of racial discrimination and harassment was clearly unreasonable in light of the known circumstances.

38. Upon information and belief, the Defendants did not appropriately discipline the students who were using racial slurs toward the minor Plaintiffs.

39. The Defendants permitted racially offensive language with heightened racial tensions to persist for the 2023-2024 school year without taking reasonable actions to address it and failed to issue appropriate discipline to the offending students.

40. Upon information and belief, and confirmed in part by "Investigative Review," the Defendants unlawfully permitted a hostile educational environment to exist at the Middle School during the 2023-2024 school year.

41. Other classmates and students of the minor Plaintiffs, who were not interviewed for the Investigative Review, also confirm that the atmosphere in the Middle School during the 2023-2024 school year was one that permitted the use of racial slurs in the middle school.

42. The use of racial slurs in the Middle School and on the bus during the 2023-2024 school year was a routine occurrence which occurred in the earshot or presence of teachers and staff.

43. The Defendants ratification of such conduct and failure to respond to notification of a racially hostile educational environment despite their duty to do so, as hereinafter more fully set forth, created an intimidating, hostile, offensive school environment in violation of Title VI of the Civil Rights Act of 1964.

44. Also, as detailed in the Investigative Review, upon information and belief, the Defendants issued discipline to non-minority students in a manner that was different and less severe than discipline issued to the minor Plaintiffs for same or similar conduct.

45. Upon information and belief, the discipline received by the minor Plaintiffs during the 2023-2024 school year and before was more severe than the discipline issued to non-minority students for the same or similar conduct.

46. In addition to the above, T.C., who is a student who receives special education, was subjected to discrimination, bullying, and mistreatment by Middle School staff based on his disability.

47. T.C. is eligible for special education services as he has been diagnosed with a defined disability. T.C. has been diagnosed with Adjustment Disorder with mixed anxiety and depressed mood, Generalized Anxiety Disorder, and Depression. His condition results in outbursts of anger, disturbance in sleep behavior, and affects his concentration, thinking, and communication. T.C. takes medication for these mental health issues.

48. Due to his required medication, NWLSD has known since 2021 that T.C. may fall asleep in school because the medications can cause drowsiness.

49. Despite this information, during the 2023-2024 school year, when T.C. would fall asleep in class, a whistle was blown in T.C.'s ear, and he was required to run "suicides" or "gassers"

as a punishment outside of class in the gym and in front of other students. This took place repeatedly throughout the 2023-2024 school year.

50. Upon information and belief, Middle School Language Arts Teacher Amy Giuffrida and Middle School American History Teacher Pamela Peters took such actions. Defendant Dovico also was aware of and approved such actions.

51. T.C. also received at least six disciplinary actions from teachers and administrators for falling asleep in class despite knowledge of his medical condition.

52. According to a concerned parent of T.C.'s classmate, T.C. was being bullied and harassed in class with such actions the entire year. This parent was so concerned by what her daughter told her about the treatment T.C. had to endure that she reached out to Middle School Guidance Counselor Micheal Weber with her concerns. Upon information and belief, Mr. Weber took no action and actually laughed at her concerns.

53. Upon Plaintiff Andrea Coaxum confronting Defendant Dovico about this situation, he confirmed it took place. In addition, the music teacher of T.C., Scott Brown, asked if his behavior was a result of not getting enough attention at home.

54. No medical professional advised NWLSD to address T.C.'s sleeping as a result of medication in such a way.

55. T.C.'s mother, Plaintiff Andrea Coaxum, never consented for such an action to take place when T.C. fell asleep.

56. Upon information and belief, no non-minority or disabled student who fell asleep in the Middle School due to prescribed medication during the 2023-2024 school year suffered the same punishment.

57. The Investigative Review conducted by King Spry into this incident found the following: "All of the Respondents involved in the decision to implement the plan to utilize running and whistles without explicit permission from [Plaintiff Andrea Coaxum] or appropriate confirmatory communication exercised poor judgment."

58. The Investigative Review recommended the following in part as a result of this incident: "Retraining of all Respondents in appropriate techniques for redirection and refocusing as well as proper procedure for changes in instructional planning, the input of relevant medical information and the requirements of parental permission."

59. The above actions of the Defendants as to T.C. constitute disability and/or racial discrimination. Such conduct is also egregious and reprehensible to a minor eighth grade student at the time.

60. The above actions of the Defendants constitute racial and disability discrimination and a violation of the minor Plaintiffs' rights under the Equal Protection Clause, 42 U.S.C. § 1983.

61. As a direct and proximate result of the said discriminatory practices of the Defendants, the minor Plaintiffs have sustained severe mental anguish, emotional distress, humiliation, and damages to reputation, systemic effect of their education, and financial harm.

62. The Plaintiffs demand a trial by jury of eight on all issues triable by a jury.

## COUNT I
## Violations of Title VI of the Civil Rights Act of 1964
## Plaintiffs v. NWLSD

63. Plaintiffs incorporate by reference all prior paragraphs as if fully set forth at length herein.

64. Pursuant to Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§2000d, et. seq." "No person in the United States shall, on the ground of race…be excluded from participation in,

be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

65. NWLSD at all times relevant to this action received Federal financial assistance.

66. The acts and conduct of the Defendants as stated above subjected the Plaintiffs to racial harassment and a hostile educational environment because of their race in violation of Title IV of the Civil Rights Act, 42 U.S.C. §2000d, et seq.

**WHEREFORE**, Plaintiffs, individually, respectfully request this Court enter judgment in their favor and against NWLSD in an amount in excess of $150,000.00, including but not limited to compensatory damages, consequential damages, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, as well as punitive damages for intentional racist discriminatory practices amounting to malicious and reckless indifference to Plaintiffs' civil rights, together with reasonable and necessary costs and attorney fees.

## COUNT II
**Violations of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, 42 U.S.C. § 1983**
**Plaintiffs v. All Defendants**

67. Plaintiffs incorporate by reference all prior paragraphs as if fully set forth at length herein.

68. Defendants violated Plaintiffs' Constitutional rights under the Equal Protection Clause by denying their equal protection because of their race.

69. Plaintiffs were harassed and discriminated by other students and the Defendants based on their race.

70. The Defendants had actual knowledge of the harassing and discriminatory conduct and statements made by other students to the Plaintiffs.

71. The Defendants' response to the harassing and discriminatory conduct was unreasonable in light of the known circumstances.

72. The Defendants showed deliberate indifference to the racially hostile educational environment and failed to properly investigate Plaintiffs' racial claims and failed to properly address or rectify the known circumstances.

73. The Defendants failed to implement and adhere to their own non-discrimination policy.

74. The custom and practice of deliberate indifference by the Defendants was the cause of the Plaintiffs' constitutional injuries.

75. The Defendants failed to properly train their employees and/or agents on how to properly investigate and discipline claims of racial discrimination and harassment by other students.

76. The Defendants own paid for investigation, which was not issued until after the 2023-2024 school year, identified that additional Title VI training was needed and necessary for all Middle School Administrators, faculty and staff.

77. The Defendants also violated Plaintiffs' Constitutional Rights under the Equal Protection Clause by issuing discipline to non-minority students in a manner that was different and better than discipline issued to the minor Plaintiffs for same or similar conduct.

78. As a direct and proximate result of the said discriminatory practices of NWLSD, the minor Plaintiffs have sustained severe mental anguish, emotional distress, humiliation, and damage to reputation, systemic effects of their education, and financial harm.

**WHEREFORE**, Plaintiffs, individually, respectfully request this Court enter judgment in their favor and against the Defendants, jointly and severally, in an amount in excess of

$150,000.00, including but not limited to compensatory damages, consequential damages, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, as well as punitive damages for intentional racist discriminatory practices amounting to malicious and reckless indifference to Plaintiffs' civil rights, together with reasonable and necessary costs and attorney fees.

**COUNT III**
**Violation of the American with Disabilities Act**
**T.C. v. NWLSD**

79. Plaintiffs incorporate by reference all prior paragraphs as if fully set forth at length herein.

80. Title II of the ADA prohibits discrimination against individuals with disabilities. 29 U.S.C. § 794(a); 42 U.S.C. § 12132.

81. T.C. was a student with a defined disability at NWLSD that substantially limited one or more major life activities.

82. T.C. was qualified to attend classes and receive educational enrichment during the 2023-2024 school year.

83. T.C. was subjected to discrimination because of his disability and was treated differently by the Defendants because of his disability.

84. The actions taken by NWLSD teachers to blow a whistle at T.C. and then make him run suicides in the gym because he fell asleep as a result of his prescribed medications, forced T.C. to endure humiliation and embarrassment in front of his peers.

85. The discrimination NWLSD forced on T.C. because of his defined disability was intentional as NWLSD knew or should have known that T.C. was a special education student with identifiable disabilities and that he was on medication that caused drowsiness.

86. The actions of NWLSD denied T.C. an appropriate educational program free of discrimination.

**WHEREFORE**, T.C. respectfully requests this Court enter judgment in his favor and against NWLSD in an amount in excess of $150,000.00, including but not limited to compensatory damages, consequential damages, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, as well as punitive damages for intentional racist discriminatory practices amounting to malicious and reckless indifference to Plaintiff's civil rights, together with reasonable and necessary costs and attorney fees.

Respectfully submitted,

**LAW OFFICES OF WILLIAM L. GOLDMAN, P.C.**

BY: */s/ William L. Goldman, Jr.*
WILLIAM L. GOLDMAN, JR., ESQUIRE

BY: */s/ Jonathan P. Riba*
JONATHAN P. RIBA, ESQUIRE
Attorneys for Plaintiffs

Dated: January 7, 2025