| | | |
|---|---|---|
| ANDREA COAXUM, Individually and as Parent and Natural Guardian of W.C. and T.C., her minor children, | : : : : | IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA |
| and | : : : | |
| KATHY YOST, Individually and as Parent and Natural Guardian of M.H., E.H., and P.H., her minor children, | : : : : | Civil Action No. 5:25-cv-00064 |
| Plaintiffs, | : : | |
| v. | : : | |
| NORTHWESTERN LEHIGH SCHOOL DISTRICT; WILLIAM DOVICO, Individually and as Principal of Northwestern Lehigh Middle School; AMY WAHL, Individually and as Assistant Principal of Northwestern Lehigh Middle School, | : : : : : : : | |
| Defendants. | : : | |

---

## DEFENDANTS' BRIEF IN SUPPORT OF THEIR RULE 12(b)(6) MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

---

KING, SPRY, HERMAN, FREUND & FAUL, LLC
John E. Freund, III Esq.
Attorney ID # 25390
Alyssa M. Hicks, Esq.
Attorney ID #325722
One West Broad Street, Suite 700
Bethlehem, Pennsylvania 18018
*Attorneys for Defendants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ iii

STATEMENT OF PROCEDURAL HISTORY AND FACTS ....................................... 1

STATEMENT OF QUESTIONS INVOLVED.................................................................. 7

ARGUMENT ..................................................................................................................... 8

    I.    Because Plaintiffs fail to substantiate deliberate indifference to known acts of racial harassment, Count I fails as a matter of law and must be dismissed. .................... 9

    II.    Because Plaintiffs fail to substantiate *Monell* liability, Count II fails as a matter of law and must be dismissed.................................................................................... 13

        (a)    Plaintiffs fail to identify a School District policy or custom that resulted in a constitutional violation. ................................................................................ 14

        (b)    Plaintiffs alternatively fail to substantiate intentional discrimination........... 15

        (c)    Plaintiffs alternatively fail to substantiate a failure to train claim. .............. 16

        (d)    The Individual Defendants are immune. ....................................................... 18

    III.    Because Plaintiffs fail to substantiate deliberate indifference or intentional disability discrimination, Count III fails as a matter of law and must be dismissed. ...................................................................................................................... 20

CONCLUSION.............................................................................................................. 23

1417456.12

# TABLE OF AUTHORITIES

**Federal Cases**

*Alexander v. Sandoval*, 532 U.S. 275 (2001) ................................................................. 10

*Anderson v. Abington Heights Sch. Dist.*, 2017 WL 6327572 (M.D. Pa. Dec. 11, 2017) ........... 21

*Andrews v. City of Phila.* 895 F.3d 1469 (3d Cir. 1990) ................................................. 14

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................................... 8

*Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742 (3d Cir. 2019) ...................................... 18

*Berardelli v. Allied Servs. Inst. of Rehab. Med.*, 900 F.3d 104 (3d Cir. 2018) ........................ 20

*Berg v. City of Allegheny*, 219 F.3d 261 (3d Cir. 2000) ................................................. 17

*Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358 (3d Cir. 1992) .............................. 9

*Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247 (3d Cir. 2014) ...................................... 11, 20

*Brown v. Muhlenberg Twp.*, 269 F.3d 205 (3d Cir. 2001) ................................................. 16

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................. 9

*Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176 (3d Cir. 2009) ... 20

*City of Canton, Ohio v. Harris*, 489 U.S. 387 (1989) .................................................... 16

*Connick v. Thompson*, 563 U.S. 51 (2011) ................................................................ 17

*Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629 (1999) ........................................... 10, 11

*Estate of Roman v. City of Newark*, 914 F.3d 789 (3d Cir. 2019) ..................................... 16

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ............................................................. 18, 20

*Hassan v. City of New York*, 804 F.3d 277 (3d Cir. 2015) ............................................... 15

*Hedges v. United States*, 404 F.3d 744 (3d Cir. 2005) ................................................... 8

*I.Z. v. City of Phila.*, 2017 U.S. Dist. LEXIS 179105 (E.D. Pa. Oct. 30, 2017) ........................ 17

*James S. ex rel. Thelma S. v. Sch. Dist. of Phila.*, 559 F. Supp. 2d 600 (E.D. Pa. 2008) ............. 15

1417456.12

*Jewish Home  v. Centers for Medicare & Medicaid Servs.*, 693 F.3d 359 (3d Cir. 2012) .......... 15

*Kline v. Mansfield*, 255 Fed. Appx. 624 (3d Cir. 2007) ................................................ 16

*Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990) ...................................................... 9

*M.M. v. School Dist. of Phila.*, 142 F.Supp.3d. 396 (E.D. Pa. 2015) ............................ 20

*Malleus v. George*, 641 F.3d 560 (3d Cir. 2011) .................................................... 8, 16

*McLaughlin v. Forty Fort Borough*, 64 F. Supp. 3d 631 (M.D. Pa. 2014).................... 9

*Monell v. Dep't. of Soc. Serv.*, 436 U.S. 658 (1978)...................................................... 14

*Phillips v. Cnty. of Allegheny*, 515 F.3d 224 (3d Cir. 2008)........................................ 8

*Rivera v. Sch. Dist.*, 2023 U.S. Dist. LEXIS 215316 (M.D. Pa. Dec. 4, 2023) ........................... 16

*S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248 (3d Cir. 2013) ........................... 20

*Saxe v. State Coll. Area Sch. Dist.*, 240 F.3d 200 (3d Cir. 2001) ................................... 10

*Shadie v. Hazleton Area Sch. Dist.*, 580 Fed. Appx. 67, 70 (3d Cir. 2014)................................ 22

*Smith v. Snyder Cty. Prison*, 2017 U.S. Dist. LEXIS 111464 (M.D. Pa. July 17, 2017) ............ 17

*Stosic v. West Jefferson Hills Sch. Dist.*, 2022 U.S. Dist. LEXIS 120900 (W.D. Pa. July 8, 2022)

............................................................................................................ 12

*Vicky M. v. Northeastern Educ. Intermediate Unit*, 689 F. Supp. 2d 721 (M.D. Pa. 2009) ......... 21

*Washington v. Davis*, 426 U.S. 229 (1976)................................................................ 15

*Wayte v. United States*, 470 U.S. 598 (1985)............................................................. 15

*Whitfield v. Notre Dame Middle Sch.*, 412 Fed. Appx. 517 (3d Cir. 2011)....................... 9, 11, 12

*Williams v. Pennridge Sch. Dist.*, 2016 U.S. Dist. LEXIS 150216 (E.D. Pa. Oct. 31, 2016)....... 10

## Federal Statutes

20 U.S.C. § 1232g....................................................................................... 19

42 U.S.C. § 2000d....................................................................................... 10

iv

## STATEMENT OF PROCEDURAL HISTORY AND FACTS

Defendants, Northwestern Lehigh School District (the "School District"), William Dovico, and Amy Wahl (together with Mr. Dovico, the "Individual Defendants" and the Individual Defendants with the School District the "School District Defendants"), by and through their attorneys, King, Spry, Herman, Freund & Faul, LLC, submit this Brief in Support of their Motion to Dismiss Plaintiffs' Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff Andrea Coaxum and her children, W.C. and T.C., along with Plaintiff Kathy Yost and her children, M.H., E.H., and P.H. (together with W.C. and T.C. the "Minor Plaintiffs"), initiated this action via a complaint filed on January 7, 2025 (the "Complaint"). *See* ECF No. 1. The School District Defendants filed a 12(b)(6) Motion to Dismiss and Brief in Support on March 7, 2025. *See* ECF No. 8. Plaintiffs filed a Notice of Intent to file an Amended Complaint on March 30, 2025 (*see* ECF No. 9) and they did so on March 28, 2025 (*see* ECF No. 10) (the "Amended Complaint"). Plaintiffs continue to assert the following causes of action: Count I – violations of Title VI of the Civil Rights Act of 1964 (against the School District); Count II – violations of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, 42 U.S.C. § 1983 ("Section 1983") (against the School District Defendants); and Count III – violations of the Americans with Disabilities Act, 42 U.S.C. §§ 12131-12134 (the "ADA") (T.C. against the School District).

Per the Amended Complaint, Minor Plaintiffs are bi-racial students at the School District who were allegedly subjected to a racially hostile educational environment during the 2023-2024 school year. *See* ECF No. 10 at ¶¶ 11, 17. T.C., M.H., E.H., and P.H. were eighth-grade middle school (the "Middle School") students who were allegedly called racial slurs by other students. *Id.* at ¶ 25. W.C. was a tenth-grade high school (the "High School") student who was allegedly

1

subjected to racial slurs by other students during his commute from the high school to the Lehigh Career Technical Institute ("LCTI"). *Id.* at ¶ 26.   The Amended Complaint outlines numerous situations wherein Plaintiffs allegedly reported race-based harassment to the School District and/or the Individual Defendants. *Id.* at ¶ 27.  Plaintiffs also assert allegations about non-parties and/or make generalizations about other alleged incidents of racial harassment.  *Id.* at ¶¶ 16-20, 22-24, 28-34.  Based on the foregoing, Plaintiffs allege that the School District Defendants failed to train staff properly, failed to investigate and/or address the allegations, and/or permitted a hostile racial environment.  *Id.* at ¶¶ 35-40.

In response to the aforesaid, the School District paid for two, third-party investigations, which outline the School District Defendants' responses to Plaintiffs' reports of racial harassment including supportive and remedial measures.  *See* a true and correct copy of T.C.'s investigation attached hereto as Exhibit A (the "T.C. Investigation Review"), W.C.'s investigation attached hereto as Exhibit B (the "W.C. Investigation Review" and together with T.C.'s Investigation Review the "Coaxum Investigation Reviews"), and M.H., E.H., and P.H.'s investigation attached hereto as Exhibit C (the "Yost Investigation Review")[1].  Tellingly, Plaintiffs fail to reference and attach the "Investigation Reviews" to their Amended Complaint and instead erroneously claim they have "no actual independent knowledge" of the School District Defendants' responses despite their participation in and receipt of the Investigation Reviews.   It is also important to note that the School District has and continues to train/educate its administration and staff on racial discrimination/harassment and on Board Policy 348 "Unlawful Harassment."  *See* a true and correct copy of Board Policy 348 and Vector Training attached hereto as Exhibit D.

---

[1] The Investigative Reviews and other exhibits are attached for consideration in accordance with Fed. R. Civ. P. 12(d), as further detailed in the Argument section.

2

### The Coaxum Investigation

For W.C. and T.C., there are two separate reports, but they are based on Ms. Coaxum's February 9, 2024, report to the School District.  *See* Exhibits A and B.  The Coaxum Investigation Reports indicate that Ms. Coaxum and her sons were interviewed on February 27, 2024, and then Ms. Coaxum filed a written complaint on March 8, 2024.  *See* Exhibit A at p. 1.  For T.C., Ms. Coaxum reported that teachers were blowing a whistle in his ear and an administrator and/or teacher was taking him outside of class to run to keep him awake despite knowing his medications make him drowsy.  *Id.*  The School District also allegedly disciplined T.C. at least seven times for falling asleep in class.  *See* ECF No. 10 at ¶ 65.  To the contrary, T.C. had sixteen discipline referrals during the 2023-2024 school year, and only three of which were solely related to sleeping.  *See* a true and correct copy of T.C.'s discipline referrals attached hereto as Exhibit E.  In response to a student conference for one of the sleeping incidents, T.C. told administration that he stayed up late playing electronics.  *Id.*  All discipline referrals related to sleep indicate that his only consequence was a student conference.  *Id.*  Several other incidents where sleeping was noted also included other non-compliant and/or disruptive behaviors.  *Id.* Ms. Coaxum also reported that T.C. is the only bi-racial student in his class, teachers make inappropriate comments to him about his home life, and he was otherwise subjected to racially inappropriate language.  *See* Exhibit A at p. 1-2.  The W.C. investigation dealt with racially inappropriate language on the bus and in one of his academic classes.  *See* Exhibit B at p. 1.

The T.C. Investigation Review shows that the third-party investigator interviewed Mr. Dovico, Ms. Wahl, School District administration, and seven other School District employees.  *See* Exhibit A at p. 2-3.  It also lists supportive measures previously offered: a safety plan, class changes, conferences with Ms. Coaxum, and a special education evaluation.  *Id.* at p. 3.    It

3

confirms there were incidents where racially inappropriate language was used in school, but it also shows that the same were promptly investigated and appropriately addressed. *Id.* at p. 4-5. The undisputed findings of fact state, in part: (1) administration met with Ms. Coaxum on February 19, 2024, to hear her concerns; (2) administration met with Mr. Dovico to discuss Ms. Coaxum's concerns; (3) administration met with the school police officer and supervisor to discuss Ms. Coaxum's concerns; (4) Mr. Dovico met with middle school staff on February 14, 2024, to address Ms. Coaxum's concerns; (5) administration met with the middle school principals on February 15, 2024, to discuss how to improve reporting race-based incidents; (6) Mr. Dovico met with the eighth grade class on February 22, 2024, to discuss behavior concerns and expectations regarding inappropriate behavior; (7) there is no evidence of the use of inappropriate language that was not promptly investigated by the School District's administration; (8) the School District took immediate remedial action including meetings held with students and staff; and (9) the School District staff believed Ms. Coaxum was supportive of the use of the whistle and running to help keep T.C. awake. *Id.* In addition to the above, the T.C. Investigation Review lists other remedial steps including School District-wide and Complainant-specific initiatives to encourage increased reporting and an increase in School District administration checking in with T.C. *Id.* at p. 5-6. Regarding the whistleblowing/running, it is notable that as soon as the School District learned that Ms. Coaxum disapproved, it promptly acted and stopped both. *Id.* at p. 6.

For W.C., the third-party investigator interviewed the high school principals, School District administration, three School District staff members, and two student witnesses. See Exhibit B at p. 3. The W.C. Investigation Review lists supportive measures previously offered: a safety plan, new transportation, a meeting with LCTI students regarding inappropriate conduct, a meeting with LCTI bus drivers to review incidents and reporting procedures, and a meeting with

4

School District bus drivers to review incidents and reporting procedures. *Id.* at p. 3.   The undisputed findings of fact state, in part: (1) W.C. was involved in a physical altercation with another student after overhearing a racial slur and, in response, the School District disciplined the students, implemented a safety plan, and changed W.C.'s bus assignment; (2) reports were made regarding the use of racial slurs and the School District investigated the same; (3) all reported incidents that resulted in a finding that such language was used resulted in discipline; and (4) the Carbon Lehigh Intermediate Unit provided related training on April 3, 2024, to staff including LCTI bus drivers/trainers. *Id.* at p. 4-5.  In addition to the above, the W.C. Investigation Review lists other remedial steps including School District-wide and Complainant-specific initiatives to encourage increased reporting and an increase in School District administration checking in with W.C.  *Id.* at p. 5.  Ultimately, the Coaxum Investigation Reviews concluded there was insufficient evidence that the School District acted deliberately indifferent to reports of race-based allegations. *See* Exhibit A at p. 6, and Exhibit B at p. 5-6.

## The Yost Investigation

The Yost Investigation Review notes that the investigation was in response to Ms. Yost's complaints that her children were subjected to racial harassment.  *See* Exhibit C at p.1.  This investigation took place during the summer of 2024.  *Id.* at p. 2.  The third-party investigator interviewed Ms. Yost, M.H., E.H., P.H., Mr. Dovico, and Ms. Wahl.  *Id.*   The third-party investigator reviewed the students' discipline records and all the reported incidents regarding racial harassment.  *Id.* at p. 4.  The undisputed findings of fact state, in part: (1) in December of 2023, a race-based incident was reported, investigated, and the offending student was not disciplined[2]; (2)

---

[2] This incident is referenced in the Amended Complaint.  P.H. received a suspension after hitting a Caucasian student who sprayed water at P.H. *See* ECF No. 10 at ¶ 47.

5

in February of 2024, a race-based incident was reported, investigated, and the offending student was disciplined; (3) again in February of 2024, a race-based incident was reported, investigated, and deemed unfounded; (4) in March of 2024, a race-based incident was reported, investigated, the offending student was disciplined, and the School District completed a threat assessment and implemented a safety plan; (5) again in March of 2024, a race-based incident was reported, investigated, and the offending student was disciplined; and (6) the evidence revealed one instance of a disparity in the implementation of discipline (see (1) above); however, there was no evidence that race was a motivating factor in the imposition of discipline in such instance due to the disparity in the students' actions. *Id.* at p. 5-6. Remedial measures referenced in the Yost Investigation Review include revisions to the School District's policies regarding disciplinary measures and the March 2024 assembly addressing concerns of racial and religious tension noted among the student body. *Id.* at 6.

### T.C.'s Disability Discrimination Claim

Finally, Ms. Coaxum alleges the School District Defendants discriminated against her T.C. based on his disabilities. She alleges that the School District knew that T.C. took medication related to mental health issues that caused him to be drowsy since 2021. *See* ECF No. 10 at ¶ 62. T.C. qualified for special education services starting March 1, 2024. *See* a true and correct copy of redacted copies of relevant records for T.C.. attached hereto as Exhibit F. The School District Defendants first became aware of mental health diagnoses on September 15, 2022. *Id.* The School District Defendants first became aware of medications related to the same on September 8, 2023. *Id.* It is believed and therefore averred that the School District did not have notice that the medication made him drowsy until October 16, 2023, after Ms. Coaxum shared the same in response to a teacher reporting T.C. falling asleep in class. *Id.*

## STATEMENT OF QUESTIONS INVOLVED

I.    **WHETHER THE SCHOOL DISTRICT IS ENTITLED TO JUDGMENT AS A MATTER OF LAW FOR COUNT I BECAUSE PLAINTIFFS FAIL TO SHOW THE SCHOOL DISTRICT WAS DELIBERATELY INDIFFERENT TO REPORTS OF RACIAL HARASSMENT?**

**Suggested Answer: Yes.**

II.    **WHETHER THE SCHOOL DISTRICT DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW FOR COUNT II BECAUSE PLAINTIFFS FAIL TO ESTABLISH MONELL LIABILITY?**

**Suggested Answer: Yes.**

III.    **WHETHER THE SCHOOL DISTRICT IS ENTITLED TO JUDGMENT AS A MATTER OF LAW FOR COUNT III BECAUSE PLAINTIFFS FAIL TO ESTABLISH DISABILITY DISCRIMINATION?**

**Suggested Answer: Yes.**

1417456.12

## ARGUMENT

It is proper to file a motion to dismiss on the basis of a complaint failing to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint must contain sufficient factual matter that if accepted as true "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (internal citations omitted). Furthermore, a court must "construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks and citations omitted). The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (internal citations omitted). The facts alleged must amount to "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. Where a complaint pleads only "facts that are 'merely consistent' with a defendant's liability," it is insufficient and cannot survive a motion to dismiss. *Id.* Furthermore, a district court must review the following when deciding on a motion to dismiss: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Moreover, "[i]f, on a motion under Rule 12(b)(6) or 12(c) matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). "If the Court considers evidence outside the pleadings, it may convert the motion to dismiss into a motion for summary judgment.

When a motion to dismiss has been alternately framed as a motion for summary judgment, the Court need not provide the parties with express notice of conversion." *McLaughlin v. Forty Fort Borough*, 64 F. Supp. 3d 631, 638 (M.D. Pa. 2014). "Through summary adjudication the court may dispose of those claims that do not present a 'genuine issue as to any material fact.'" *Id.* (quoting Fed. R. Civ. P. 56(a)). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

I.    **Because Plaintiffs fail to substantiate deliberate indifference to known acts of racial harassment, Count I fails as a matter of law and must be dismissed.**

Plaintiffs allege that the School District's acts subjected the Minor Plaintiffs "to racial harassment and a hostile educational environment because of their race." *See* ECF No. 10 at ¶ 81. Under Title VI, however, "a school may only be held liable for a Title VI claim of student-on-student racial discrimination when the school's response is clearly unreasonable in light of the known circumstances." *Whitfield v. Notre Dame Middle Sch.*, 412 Fed. Appx. 517, 521 (3d Cir. 2011) (internal quotations and citation omitted). The Investigation Reviews undoubtedly demonstrate that the School District reasonably responded to complaints of racial harassment.

9

Therefore, given the documentation provided, there is no dispute of material fact and the School District is entitled to judgment as a matter of law with respect to Count I.

Title VI prohibits intentional discrimination based on race in any program that receives federal funding. *See* 42 U.S.C. § 2000d. A plaintiff may sue a school for monetary damages for failing to address a racially hostile environment only if it engages in intentional discrimination. *See Williams v. Pennridge Sch. Dist.*, 2016 U.S. Dist. LEXIS 150216, at *9 (E.D. Pa. Oct. 31, 2016) (citing *Alexander v. Sandoval*, 532 U.S. 275, 283 (2001)); *see also Saxe v. State Coll. Area Sch. Dist.*, 240 F.3d 200, 206 n.5 (3d Cir. 2001). Nothing in the Amended Complaint supports intentional discrimination carried out by the School District. "Actionable harassment deprives the victim of equal access to the school's educational opportunities and has a 'systemic effect on educational programs or activities.'" *Whitfield*, 412 Fed. Appx. at 521 (quoting *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 633 (1999)). "The harassment must be 'severe, pervasive, and objectively offense,' and rise beyond the level of 'simple acts of teasing and name-calling among school children . . . even where these comments target differences in [race].'" *Id.* (quoting *Davis*, 526 U.S. at 652).

The Amended Complaint alleges the Minor Plaintiffs were subjected to racial harassment carried out by their peers[3]. In these cases, a plaintiff may recover for alleged "severe, pervasive, and objectively offensive" student-on-student harassment if the school "acts with deliberate indifference to known acts of harassment." *Davis*, 526 U.S. at 633 . To establish deliberate indifference, "a plaintiff must show that the school district had knowledge of the alleged

---

[3] Although not discussed herein at length, there is a question as to whether each Minor Plaintiff can substantiate harassment that constitutes "severe or pervasive." The School District focuses on its reasonable response to all known harassment, but alternatively, would challenge whether the Amended Complaint sufficiently pleads facts to support "severe or pervasive" harassment for each Minor Plaintiff.

1417456.12

misconduct and the power to correct it but nonetheless failed to do so." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 273 (3d Cir. 2014). Moreover, "courts should refrain from second-guessing the disciplinary decisions made by school administrators." *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 648 (1999). "[S]chool administrators are deemed to act with deliberate indifference 'only where the [school's] response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances.'" *Whitfield*, 412 Fed. Appx. at 522 (quoting *Davis*, 526 U.S. at 648).

The Investigation Reviews demonstrate that the School District reasonably responded to reports of racial harassment. Plaintiffs allege that throughout the 2023-2024 school year, the Minor Plaintiffs were subjected to racial harassment by their peers, which resulted in a hostile educational environment. The Investigation Reviews confirm that Plaintiffs reported harassment to the School District several times during the aforesaid period, but also that the School District investigated and responded to every reported incident. *See* Exhibit A at p. 4-5, Exhibit B at p. 4-5, Exhibit C at p. 5-6. The School District also retained counsel to independently investigate the reports. *See* Exhibits A-C. But for one incident, the offending students were disciplined for their actions. *Id.* The Yost Investigation Review does note a disparity in the implementation of discipline, but there was no evidence that race was a motivating factor in the imposition of discipline in such instance. *See* Exhibit C at p. 5-6. Tellingly, the difference in behavior between the two students (spraying water versus hitting) is significant. *Id.*; *see also* ECF No. 10 at ¶ 47.

Moreover, the School District offered supportive measures for the Minor Plaintiffs, including safety plans, class changes, bus changes, conferences, and additional check-ins. *See* Exhibit A at p. 3-5; Exhibit B at p. 3-5; Exhibit C at p. 5-6. The School District also implemented a variety of remedial measures, including a student assembly to address racial tension, a revision

11

to its policies regarding the discipline of harassment including race, meetings with relevant staff addressing the reports and best practices, meetings with the administration on how to improve reporting race-based incidents, and related training. *Id.*; *see also Exhibit D.* The aforesaid demonstrates that the School District diligently and reasonably responded to all reports of racial harassment, which irrefutably substantiates the School District's argument that Count I fails as a matter of law.

The School District relies on relevant case law to further support this argument. In *Whitfield*, an African American middle school student (referred to as "A.R.") was subjected to race-based harassment. 412 Fed. App'x at 519. The first incident involved a Caucasian student who slapped A.R., spit in her face, and told her she did not belong. *Id.* The offending student served a one-day in-school suspension. *Id.* In response, the district implemented a racial sensitivity program. *Id.* Several other racially motivated incidents happened thereafter with a mix of responses from the district (e.g., mediation with A.R. and the offending students, a "diversity metaphors" assignment, detention, and suspensions). *Id.* In affirming the district court's decision, the Third Circuit found the school did not act with deliberate indifference when it responded to race-based harassment with discipline and the implementation of a racial sensitivity program. *Id.* at 522. *Whitfield* is analogous to the facts before the Court as evidenced by both the supportive and remedial measures. *See* Exhibit A at p. 3-5; Exhibit B at p. 3-5; Exhibit C at p. 5-6.

In contrast, the school district in *Stosic v. West Jefferson Hills School District* blatantly failed to address multiple reports of race-based harassment. 2022 U.S. Dist. LEXIS 120900 (W.D. Pa. July 8, 2022). During the 2017-2018 school year, the minor plaintiff was subjected to racial harassment on social media, which her mother reported to the school district. *Id.* at *1-2. To plaintiffs' knowledge, the offending student was never disciplined. *Id.* at *2. Months later, the

minor plaintiff was assaulted by another student who received a one-day suspension.  *Id.* at *3.  Thereafter, the minor plaintiff was bullied by other students, and despite the school district's knowledge of the same, it did nothing in response.  *Id.* at *4.  The school district advised the plaintiffs that the offending students were given a warning and instructed to stay away.  *Id.* at *6-7.  The *Stosic* Court concluded that the plaintiffs sufficiently plead allegations demonstrating severe or pervasive conduct based on race and noted that "peers continued to use the [n-]word *without repercussions* after concerns were brought to the District's attention."  *Id.* at *20 (emphasis added).  It is evident that the school district in *Stosic* acted unreasonably as it not only failed to discipline students but also failed to make efforts to eliminate racial harassment within its buildings.  The facts before the Court could not be more different.

Based on the same, the case law is clear – remedies under Title VI are reserved for situations where school districts are aware of racial harassment and fail to respond appropriately.  That is not what happened here.  The Investigation Reviews demonstrate that the School District neither ignores nor minimizes racial harassment.  Instead, it thoroughly investigates and reasonably responds to all reported incidents.  Without deliberate indifference, Count I fails as a matter of law.

## II.    Because Plaintiffs fail to substantiate *Monell* liability, Count II fails as a matter of law and must be dismissed.

Plaintiffs next allege that the School District Defendants "violated Plaintiffs' constitutional rights under the Equal Protection Clause by denying their equal protection because of their race."  *See* ECF No. 10 at ¶ 83.  This is based on the School District Defendants "response to the harassing and discriminatory conduct," which they allege was "unreasonable in light of known circumstances."  *Id.* at ¶ 86.  This alleged "custom and practice of deliberate indifference . . . was the cause of the Plaintiff's constitutional injuries."  *Id.* at ¶ 88.  Finally, Plaintiffs allege the School

13

District failed to properly train their employees "on how to properly investigate and discipline claims of racial discrimination and harassment by other students." *Id.* at ¶ 89. For the foregoing reasons, Plaintiffs fail to substantiate these allegations and, therefore, Count II fails to state a claim upon which relief can be granted.

      (a)    <u>Plaintiffs fail to identify a School District policy or custom that resulted in a constitutional violation.</u>

To establish liability under Section 1983, a plaintiff must demonstrate a constitutional violation by a state actor that was caused by a municipal policy or custom. *See Monell v. Dep't. of Soc. Serv.*, 436 U.S. 658, 691 (1978). A government entity cannot be held liable for constitutional violations solely because of the actions of its employees. *Id.* In *Monell*, the United States Supreme Court found that "a plaintiff must identify the challenged policy or custom, attribute it to the municipality itself, and establish 'a causal link' between the policy or custom and the constitutional injury alleged." *Id.* A course of conduct is a "custom" when, though not authorized by law, "such practices of state officials [are] so permanent and well settled" as to virtually constitute law. *Andrews v. City of Phila.*, 895 F.3d 1469, 1480 (3d Cir. 1990).

As stated, Plaintiffs allege that there is a "custom or practice of deliberate indifference" at the School District in response to reports of racial harassment. *See* ECF No. 10 at ¶ 88. However, the Investigative Reviews refute these allegations. The School District Defendants investigated each report of racial harassment. *See* Exhibit A, B, and C. But for one incident wherein an offending student was not punished, all offending students were disciplined. *See* Exhibit A at p. 4-5, Exhibit B at p. 4-5, Exhibit C at p. 5-6. This isolated incident is insufficient to establish a practice that is "permanent and well settled" particularly when the Investigative Reviews show that the School District Defendants reasonably responded to all other reports. Moreover, the School District further responded by taking action to protect the Minor Plaintiffs and to reduce

14

future racial harassment.  *See* Exhibit A at p. 3-5; Exhibit B at p. 3-5; Exhibit C at p. 5-6.  Plaintiffs

attempt to establish a practice of racial harassment at the School District, but generally alleging

other students also experienced the same but these allegations cannot escape what is evidenced by

the attached documentation.  *See also Malleus*, 641 F.3d at 563  (in deciding a motion to dismiss,

the court will strike conclusory allegations).    Despite Plaintiffs' attempt to hide from the School

District's reasonable responses outlined in the Investigation Reviews, the evidence does exist and

refutes their claims.  Therefore, Plaintiffs fail the *Monell* test.  Notwithstanding, Plaintiffs also fail

to state an equal protection claim.

      (b)    <u>Plaintiffs alternatively fail to substantiate intentional discrimination.</u>

To sufficiently plead a Section 1983 claim for violation of the Equal Protection Clause of

the Fourteenth Amendment, a plaintiff must allege that he or she "received different treatment

from other similarly situated individuals or groups."  *James S. ex rel. Thelma S. v. Sch. Dist. of

Phila.*, 559 F. Supp. 2d 600, 623 (E.D. Pa. 2008).  "To state an equal protection claim, Plaintiffs

must allege (and ultimately prove) 'intentional discrimination.'"  *Hassan v. City of New York*, 804

F.3d 277, 294 (3d Cir. 2015) (quoting *Washington v. Davis*, 426 U.S. 229, 241 (1976)).  "[M]ere

unequal treatment or adverse effect" is not sufficient.  *Jewish Home of E. PA v. Centers for

Medicare & Medicaid Servs.*, 693 F.3d 359, 363 (3d Cir. 2012).  Rather, the plaintiff "must show

that the 'decisionmaker . . . selected or reaffirmed a particular course of action at least in part

because of, not merely in spite of, its adverse effects.'"  *Id.* (quoting *Wayte v. United States*, 470

U.S. 598, 610 (1985)).

In addition to Plaintiffs' inability to establish a policy or custom, they also fail to establish

an equal protection claim.  Plaintiffs generally allege the Minor Plaintiffs "were treated differently

based on their race."  *See* ECF No. 10 at ¶ 24.  They include one specific allegation, which states

the School District Defendants issued "discipline to non-minority students in a manner that was

15

different and better than discipline issued to the minor Plaintiffs for same or similar conduct." *Id.* at ¶ 90. Based on the Investigation Reviews, there is a single incident where there is a disparity in the implementation of discipline. *See* Exhibit C at p. 5. Specifically, P.H. received an in-school suspension after hitting a Caucasian student in the groin area after said student sprayed him with water. *Id.* The Caucasian student was not disciplined. *Id.* Notably, there is a significant difference between the act carried out by P.H. and the Caucasian student. *Id.* Ultimately, the third-party investigator noted the disparity but concluded that "there was no evidence to establish that race was a motivating factor in the imposition of discipline in such instance." *Id.* at p. 6. Plaintiffs fail to cite any other specific circumstances of unequal treatment, let alone unequal treatment resulting from intentional discrimination. *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (in deciding a motion to dismiss, the court will strike conclusory allegations). Based on the foregoing, Plaintiffs fail to substantiate an equal protection claim. They also fail to plead the requisite facts for a failure to train claim.

(c)    <u>Plaintiffs alternatively fail to substantiate a failure to train claim.</u>

The United States Supreme Court has recognized "limited circumstances in which an allegation of 'failure to train' can be the basis for liability under § 1983." *City of Canton, Ohio v. Harris*, 489 U.S. 387, 389 (1989)). "A plaintiff asserting a municipal liability claim based on a failure or inadequacy of training, supervision, or discipline 'need not allege an unconstitutional policy.'" *Rivera v. Sch. Dist.*, 2023 U.S. Dist. LEXIS 215316, at *63 (M.D. Pa. Dec. 4, 2023) (quoting *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019)). Rather, a plaintiff must show the school's failure to train, supervise, or discipline its employees "reflects a deliberate or conscious choice." *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 215 (3d Cir. 2001). "Proving that an injury could have been avoided if a school official had better or more training is not enough to show municipal liability." *Kline v. Mansfield*, 255 Fed. Appx. 624, 627 (3d Cir. 2007).

16

"Deliberate indifference," for failure to train purposes, "can be shown through the existence of a pattern of tortious conduct by inadequately trained employees, or in some circumstances through a single instance where there is a strong likelihood that the situation will recur and that a[] [state actor] lacking specific tools to handle that situation will violate citizens' rights." *I.Z. v. City of Phila.*, 2017 U.S. Dist. LEXIS 179105, at *7 (E.D. Pa. Oct. 30, 2017) (citing *Berg v. City of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000)). It "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Smith v. Snyder Cty. Prison*, 2017 U.S. Dist. LEXIS 111464, at *48-49 (M.D. Pa. July 17, 2017) (Schwab, J.) (internal quotations and citation omitted). "Without notice that a course of training is deficient in a particular respect, decision-makers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick v. Thompson*, 563 U.S. 51, 62 (2011).

The School District has historically trained and continues to train its employees on unlawful harassment. The School District's Board Policy 348 outlines the procedures in place regarding unlawful harassment and it educates its employees with various trainings titled Unlawful Harassment; Cultural Competence & Racial Bias; and Diversity, Equity, and Inclusion Practices: Staff-to-Staff and Staff-to-Student. *See* Exhibit D. The School District admits that the Yost Investigation Review notes a variety of recommendations, including training for all Middle School administrators, faculty, and staff. *See* Exhibit C at p 7. The School District denies, however, that this demonstrates "the existence of a pattern of tortious conduct by inadequately trained employees." *I.Z.*, 2017 U.S. Dist. LEXIS 179105 at *7. Importantly, the Investigation Reviews overwhelmingly demonstrate a pattern of School District administrators investigating, disciplining, and otherwise responding to reports of racial harassment. But for the situations with

17

the Minor Plaintiffs described in the Amended Complaint, Plaintiffs fail to identify a historical

pattern (that are not conclusory in nature) of constitutional injuries based on race.  The Yost

Investigation Review includes recommendations to avoid a future "lack of uniform approach in

the administration of discipline" and to "further eliminate any ongoing racial or religious tension

amongst the student body and promote cultural diversity."  *See* Exhibit C at p. 7.  This does not

represent a failure to train, and instead, demonstrates prospective action to further protect the

School District's students.  Finally, Plaintiffs fail to substantiate individual liability.

   (d) <u>The Individual Defendants are immune.</u>

   Government officials are entitled to qualified immunity when "their conduct does not

violate clearly established statutory or constitutional rights of which a reasonable person would

not have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  To impose liability, the

plaintiff must prove the following: (1) the violation of a constitutional right; (2) the right was

clearly established at the time of the alleged violation; and (3) the unconstitutional nature of the

action is apparent to an objectively reasonable observer.  *Id.* at 818-89.  "For a right to be clearly

established, there must be sufficient precedent at the time of the action, factually similar to the

plaintiff's allegations, to put defendant on notice that his or her conduct is constitutionally

prohibited."  *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 762 (3d Cir. 2019) (internal

quotations and citation omitted).

   Plaintiffs fail to prove the Individual Defendants violated Plaintiffs' constitutional rights.

The Amended Complaint alleges that Plaintiffs reported the harassment to the Individual

Defendants multiple times throughout the 2023-2024 school year.  *See* ECF No. 1 at ¶ 27.

Plaintiffs generally allege that the School District Defendants failed to promptly investigate, take

appropriate action, and showed deliberate indifference to racial discrimination and harassment.  *Id.*

at ¶¶ 35-38.  Plaintiffs claim that the School District Defendants "did not appropriately discipline

18

the students who were using racial slurs" or "the discipline received by the [M]inor Plaintiffs . . . was more severe than the disciplined issued to non-minority students for the same or similar conduct." *Id.* at ¶¶ 52, 59.

As discussed in great detail herein, the Investigation Reviews refute these conclusions.  For the relevant investigations (the Yost Investigation Review and T.C.'s Investigation Review), the Individuals Defendants were interviewed.  *See* Exhibit A at p. 3; Exhibit B at p. 3; Exhibit C at 2. The Individual Defendants do not dispute that Plaintiffs reported multiple incidents to them.  *See generally* Exhibits A and C.  The Individual Defendants do not dispute that they would not reveal discipline information about specific students to Plaintiffs pursuant to federal law.  See 20 U.S.C. § 1232g and 34 C.F.R. Part 99.  The Individual Defendants do dispute, however, that they failed to investigate reports of harassment and appropriately discipline students.  *See generally* Exhibits A, B, and C.

The T.C. Investigation Review notes that "[a]ll three Complaints reported to the Administration were investigated;" "[t]he corroborated incidents resulted in a disciplinary Response by the District in the forms of suspensions consistent with Policy 103;" Mr. Dovico met with eighth-grade staff to address Ms. Coaxum's concerns;  and "[t]he District took immediate remedial actions including meetings held with students and staff."  *See* Exhibit A at p. 4-5.  The Yost Investigation Report outlines the reports made by Plaintiffs and the actions taken by the School District Defendants.  See Exhibit C at p. 5-6.  As mentioned, there was one incident where P.H. received an in-school suspension for hitting a Caucasian student in the groin area after said student sprayed him with water.  *Id.* at p. 5.  The Caucasian student was not disciplined.  *Id.*  It cannot reasonably follow that the administrator who issued the discipline (1) violated P.H.'s constitutional rights and (2) reasonably knew that this discipline would violate a known right,

particularly when the conduct is vastly different.  Moreover, the third-party investigator concluded that this single instance of disparity was not racially motivated.  *Id.* at p. 5-6.

The aforesaid is insufficient to show that the Individual Defendants' conduct clearly violates "statutory or constitutional rights of which a reasonable person would not have known." *Harlow*, 457 U.S. at 818 (1982).  Given the documentation provided, there is no dispute of material fact and the School District Defendants are entitled to judgment as a matter of law with respect to Count II.  In the event Count II is not otherwise dismissed, the Individual Defendants are immune.

### III. Because Plaintiffs fail to substantiate deliberate indifference or intentional disability discrimination, Count III fails as a matter of law and must be dismissed.

To prevail on an ADA violation claim, T.C. must demonstrate that he (1) has a disability; (2) was otherwise qualified to participate in a school program; and (3) was denied benefits of the program or was otherwise subject to discrimination because of his disability.  *Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 189 (3d Cir. 2009).  "The focus of [ ] ADA claims is a determination that student was deprived of a service because he is disabled." *M.M. v. School Dist. of Phila.*, 142 F.Supp.3d. 396, 402 (E.D. Pa. 2015).  "[T]he ADA provides for 'full and equal enjoyment' of public accommodations [ ] to people with disabilities." *Berardelli v. Allied Servs. Inst. of Rehab. Med.*, 900 F.3d 104, 110 (3d Cir. 2018).

Compensatory damages are not available under the ADA or Section 504 absent intentional discrimination.  *See  S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 262 (3d Cir. 2013).  In the Third Circuit, a plaintiff may also establish intentional discrimination by showing deliberate indifference.  *Id.*; *see also Blunt*, 767 F.3d at 272.  "Deliberate indifference must be a deliberate choice, rather than negligence or bureaucratic inaction."  *Id.*  at 263.  The "allegations that one would have or should have known will not satisfy the knowledge prong of deliberate indifference." *Anderson v. Abington Heights Sch. Dist.*, 2017 WL 6327572, at *10 (M.D. Pa. Dec.

11, 2017) *aff'd*, 779 F.Appx. 904 (3d Cir. 2019) (internal quotations and citation omitted). Thus, to establish a claim for compensatory damages, T.C. must prove that the School District had knowledge that a federally protected right is substantially likely to be violated, and the School District failed to act despite that knowledge. *Id.* at 265. *See Vicky M. v. Northeastern Educ. Intermediate Unit*, 689 F. Supp. 2d 721, 736 (M.D. Pa. 2009) (concluding that a plaintiff must prove more than just a disability and denial of service; they must show that the disability was the cause of the discrimination or denial of benefits).

The Amended Complaint alleges that T.C. receives special education services due to his diagnoses of Adjustment Disorder, Generalized Anxiety Disorder, and Depression. *See* ECF No. 10 at ¶ 61. He takes medication for his mental health issues, which makes him drowsy. *Id.* at ¶¶ 61-62. The School District Defendants first became aware of mental health diagnoses on September 15, 2022. *See Exhibit F.* The School District Defendants first became aware of medications related to the same on September 8, 2023. *Id.* It is believed and therefore averred that the School District did not have notice that the medication made him drowsy until October 16, 2023, after a teacher notified Ms. Coaxum that T.C. was falling asleep during class. *Id.* The T.C. Investigation Review acknowledges that School District staff would try to keep him awake by either blowing a whistle at him or having him run. *See* ECF No. 10 at ¶ 63; *see also* Exhibit A at p. 5. The third-party investigator noted that the individuals who did this exercised poor judgment by not obtaining Ms. Coaxum's written consent, but three of the four individuals who were present at a meeting with Ms. Coaxum in November of 2023, believed she agreed to these suggestions. *Id.* Moreover, the rationale was that T.C. is a student athlete (he plays basketball), and the staff believed these were good techniques to motivate him to stay awake/alert in class. *Id.* at p. 6. Once

the School District learned that Ms. Coaxum did not approve of these techniques, the administration promptly acted and stopped both from occurring. *Id.*

The School District admits these techniques were atypical, but when reviewed with all available information, they fall incredibly short of deliberate indifference to a violation of a constitutional right. The T.C. Investigation Review shows that the staff believed T.C. would be incentivized by these techniques. *Id.* There is nothing to indicate that the decision to implement the same is based on disability discrimination. Moreover, Ms. Coaxum also alleges the School District disciplined T.C. at least seven times for falling asleep in class. *See* ECF No. 10 at ¶ 65. To the contrary, T.C. had sixteen discipline referrals during the 2023-2024 school year, and only four of which were solely related to sleeping. *See* Exhibit E. In response to a student conference for one of the sleeping incidents, T.C. told administration that he stayed up late playing electronics. *Id.* All discipline referrals related to sleep indicate that his only consequence was a student conference. *Id.* Several other incidents where sleeping was noted also included other non-compliant and/or disruptive behaviors. *Id.*

In an analogous case, *Shadie v. Hazleton Area Sch. Dist.*, the student "was subjected to three episodes of inappropriate verbal and physical contact [by a teacher], and that this treatment stemmed from a classroom aide's inability to properly accommodate." 580 Fed. Appx. 67, 70 (3d Cir. 2014). The District Court, affirmed by the Third Circuit, concluded there was no intentional discrimination as some of these incidents were not brought to the attention of school administrators, and others were timely investigated/remedied. *Id.* Similarly, once Ms. Coaxum's concerns were brought to the School District's attention, the matter was investigated, and the staff were directed to stop. Therefore, given the documentation provided, there is no dispute of material fact and the School District is entitled to judgment as a matter of law with respect to Count III.

22

## CONCLUSION

As outlined herein, the School District Defendants are entitled to judgment as a matter of law and respectfully request this Court to dismiss the Amended Complaint with prejudice.


Respectfully Submitted,

KING, SPRY, HERMAN, FREUND & FAUL, LLC


Date: April 21, 2025              By: /s/ *John E. Freund, Esq.*
                                       John E. Freund, Esq
                                       Attorney ID No. 25390
                                       jef@kingspry.com
                                  By: /s/ *Alyssa M. Hicks, Esq.*
                                       Alyssa M. Hicks, Esquire
                                       Attorney ID No. 327522
                                       ahicks@kingspry.com

23

1417456.12

**CERTIFICATE OF SERVICE**

The undersigned attorneys for Defendants hereby certify that a true and correct copy of the foregoing document has been electronically filed and is available for viewing and downloading from the ECF system in accordance with the local Federal Rules of Civil Procedure and has been served electronically upon the counsel of record on April 21, 2025.

Respectfully Submitted,

KING, SPRY, HERMAN, FREUND & FAUL, LLC

Date: April 21, 2025

By: /s/ *John E. Freund, Esq.*
       John E. Freund, Esq
       Attorney ID No. 25390
       jef@kingspry.com
By: /s/ *Alyssa M. Hicks, Esq.*
       Alyssa M. Hicks, Esquire
       Attorney ID No. 327522
       ahicks@kingspry.com

1417456.12